## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **IRONSHORE SPECIALTY INSURANCE COMPANY,** | : <br> : <br> : |
| **Plaintiff,** | :     **Civil Action No.** <br> : |
| **v.** | : <br> : |
| **CAESARSTONE LTD f/k/a CAESARSTONE SDOT-YAM LTD and CAESARSTONE USA, INC.,** | : <br> : <br> : |
| **Defendants.** | : <br> : |

---

## COMPLAINT

Ironshore Specialty Insurance Company ("Ironshore"), by and through its counsel, hereby brings this Complaint against Defendants Caesarstone USA, Inc., ("Caesarstone USA"), and Caesarstone Ltd. f/k/a Caesarstone Sdot-Yam Ltd. ("Caesarstone Ltd") (collectively "Caesarstone"), and alleges as follows:

### NATURE OF THE CASE

1.      This is an insurance coverage dispute.  Ironshore seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, of its coverage rights and obligations in connection with Caesarstone's claim for coverage under the various Environmental Protection Insurance Coverage Primary and related Excess Policies issued by Ironshore to Caesarstone USA from May 17, 2011 through May 17, 2017 (the "Ironshore Policies"). The Ironshore Policies' relevant insuring agreements and related terms and conditions are identical.

2.      Caesarstone seeks coverage from Ironshore for the numerous lawsuits filed against them and other defendants involving claims of silica-related illnesses and/or diseases due to exposure to the various defendants' stone products (the "Silica Exposure Lawsuits"). The

Silica Exposure Lawsuits contain the same general allegations with varying exposure periods; however, most underlying plaintiffs claim they (or their spouses) were first exposed to the silica-containing products before the 2011-2012 policy period.

3.      Ironshore has agreed to defend Caesarstone under a reservation of rights, but now seeks the following declarations:

- Under the Ironshore Policies' "deemer provisions," as set forth in Common Insuring Agreements 3 and 4, all **bodily injury**[1] alleged in the Silica Exposure Lawsuits is deemed to have occurred in, and therefore solely triggers, the 2011-2012 Primary Policy.

- The Silica Exposure Lawsuits constitute a single **occurrence** and, therefore, Ironshore's obligation to defend and indemnify Caesarstone in the Silica Exposure Lawsuits, if any, is subject to a single $1 million Each **Occurrence** limit under the applicable Primary Policy.

- Ironshore has no obligation to defend Caesarstone under the Excess Policies.

- Ironshore has no duty to indemnify Caesarstone for any punitive damages.

- Finally, Ironshore does not have any duty to defend or indemnify Caesarstone for damages arising from exposure to the same general harmful conditions which took place wholly outside of the Ironshore Policies' effective period.

4.      A real and actual controversy exists between Ironshore and Caesarstone concerning the scope of coverage for the Silica Exposure Lawsuits.

5.      Therefore, Ironshore respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, in its favor, and against Caesarstone.

---

[1] **Bolded** terms are defined in the Ironshore Policies.

## THE PARTIES

6.     Ironshore is an Arizona corporation with its principal place of business in Massachusetts.

7.     Upon information and belief, Caesarstone Ltd is an Israeli company with its principal place of business located at Kibbutz Sdot-Yam, MP Menashe, Israel 3780400.

8.     Upon information and belief, Caesarstone USA is a California corporation with its principal place of business located at 1401 West Morehead Street, Suite 100, Charlotte, North Carolina 28208.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this district because the parties have contractually agreed, in the Ironshore Policies, that:

> [i]n the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that any such litigation shall take place in the appropriate federal or state court located in New York, New York . . . .

(Ex. 1-6, Ironshore Primary Policies, § IV. 5.)

## FACTS

A.     **The Ironshore Policies**

11.     Ironshore issued the following Environmental Protection Insurance Coverage Package Primary Policies (the "Ironshore Primary Policies") to Caesarstone USA:

- 001039500 (effective May 17, 2011, to May 17, 2012), Ex. 1, attached hereto;

- 001039501 (effective May 17, 2012, to May 17, 2013), Ex. 2, attached hereto;

- 001039502 (effective May 17, 2013, to May 17, 2014), Ex. 3, attached hereto;

- 001039503 (effective May 17, 2014, to May 17, 2015), Ex. 4, attached hereto;

- 001039504 (effective May 17, 2015, to May 17, 2016), Ex. 5, attached hereto; and

- 001039505 (effective May 17, 2016, to May 17, 2017), Ex. 6, attached hereto.

12.     The Ironshore Primary Policies have pertinent limits of $1,000,000 per **occurrence** and $2,000,000 in the aggregate.

13.     Ironshore also issued Environmental Excess Liability Policies No. 001039400 through 001039405 (the "Ironshore Excess Policies") which follow form to each respective Ironshore Primary Policy. Exhibits 7 - 12, attached hereto.

14.     The Ironshore Excess Policies have a pertinent Each Event limit of $20,000,000. Unlike the Primary Policies, there is no duty to defend under the Excess Policies.

15.     In general, and subject to its terms and conditions, the Ironshore Primary Policies contain a Products Pollution and Exposure Liability Coverage Form that provides coverage for "sums that the insured becomes legally obligated to pay as damages" "because of **bodily injury** or **property damage** arising out of the ingestion, inhalation, or absorption of contact with, or exposure to, any fumes, dust, particles, vapors, liquids or other substances that are or originate from **your product**, and included in the **products-completed operations hazard**, but only if the **bodily injury property damage** or **environmental damage** is caused by an **occurrence** that takes place in the **coverage territory**" and "takes place during the **policy period**." (Exs. 1-6, § I. C.1.)

- 4 -

16.    The Ironshore Primary Policies Common Insuring Agreements (3) and (4) contain

the following language:

> The following applies to progressive or indivisible **bodily injury**, **property damage** or **environmental damage**, including any continuation, change or resumption of such **bodily injury**, **property damage** or **environmental damage**, which takes place over a period of days, weeks, months or longer caused by continuous or repeated exposure to the same, related or continuous (i) **pollution incident**, or (ii) general harmful conditions or substances.

> a.    Such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have taken place only on the date of first exposure to such **pollution incident** or general harmful conditions or substances; or

> b.    Such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have taken place during the **policy period** of the first policy providing coverage substantially the same as that provided by COVERAGE PART I of this policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the policy period but only if:

>> (1)    The date of first exposure cannot be determined or is before the effective date of the first policy issued by us to you providing coverage substantially the same as provided by COVERAGE PART I of this policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period**; and

>> (2)    Such **bodily injury**, **property damage** or **environmental damage** continues, in fact, to take place during the **policy period**.

(*Id*. § I, Common Insuring Agreement (3))

> If the same, related or continuous **pollution incident** or general harmful conditions or substances results in **bodily injury**, **property damage** or **environmental damage** that takes place during **policy periods** of different policies issued by us to you providing coverage substantially the same as that provided by COVERAGE PART I of this policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period**:

> a.    All such **bodily injury**, **property damage** and **environmental damage** shall be deemed to have taken place only during the first **policy period** of such policies in which any of the **bodily injury**, **property damage** or **environmental damage** took place; and

> b.    All damages arising from such **bodily injury**, **property damage** or environmental damage shall be deemed to have arisen from one **occurrence**

and shall be subject to the Each Occurrence Limit applicable to the policy for such first **policy period**.

(*Id*. § I, Common Insuring Agreement (4))

17.    The Ironshore Primary Policies define **occurrence** to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. §V. 31.)

18.    The Ironshore Primary Policies define **bodily injury** to mean "physical injury, sickness, disease, building-related illness, mental anguish, shock or emotional distress, sustained by any person, including death resulting therefrom." (*Id*. § V. 4.)

19.    To the extent that other valid and collectible insurance is available for a covered loss, Ironshore's obligations are limited by the "Other Insurance" provision included in § IV of the Ironshore Primary Policies.

20.    In addition, the Ironshore Primary Policies contain a New York choice of law provision stating as follows:

> In the event that the insured and we have any dispute concerning or relating to this policy including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles.

(*Id*. § IV. 6.)

B.    **The Silica Exposure Lawsuits**

21.    Around 175 complaints have been filed, and similar, additional complaints continue to be filed against Caesarstone and others primarily in the Superior Courts of the State of California in the Counties of Los Angeles, San Francisco, and Orange (the "Silica Exposure Lawsuits"). A chart identifying the Silica Exposure Lawsuits is attached hereto as Exhibit 13.

22.     Apart from the names of the underlying plaintiffs and the time periods of exposure, the allegations in the Silica Exposure Lawsuits are generally the same.

23.     The Silica Exposure Lawsuits allege that various individuals working as stone cutters and fabricators developed silica-related illnesses and diseases due to prolonged exposure to crystalline silica and other resins, additives, and chemicals by inhaling dust from cutting, grinding, drilling, and polishing, laminating, and installing the defendants' stone products in homes throughout California.

24.     The Silica Exposure Lawsuits allege various periods of exposure spanning from 1988 through 2022 with most exposures first occurring prior to 2013.

25.     The following causes of action are asserted in almost every Silica Exposure Lawsuit: (1) negligence; (2) strict liability (failure to warn); (3) strict liability (design defect); and (4) fraudulent concealment.

26.     Some of the Silica Exposure Lawsuits also contain causes of action for breach of implied warranties and loss of consortium, and most seek punitive damages.

C.      **Ironshore's Correspondence with Caesarstone**

27.     Ironshore agreed to participate in the defense of Caesarstone USA subject to a reservation of rights, as outlined in its letters dated October 14, 2021, December 15, 2022, September 19, 2023, October 11, 2023, and April 17, 2024. Those letters attached hereto as Exhibits 14, 15, 16, 17, and 18.

28.     Among other things, Ironshore reserved its right to limit coverage to the 2011-2012 **policy period** because that is when the alleged **bodily injury** is deemed to have taken place under the terms of the Primary Policies.

29.     Further, Ironshore stated that its obligations would be exhausted if any settlement amount allocated to the Silica Exposure Lawsuits exceeded the 2011-2012 Primary Policy's

Each Occurrence Limit and the Each Event Limit of the applicable Excess Policy because the Silica Exposure Lawsuits involve a single **occurrence**.

30.    In addition, Ironshore reserved the right to limit its coverage obligations pursuant to "Other Insurance" provision and deny coverage for any punitive damages claimed.

31.    In 2025, Ironshore committed to pay the settlement in one of the Silica Exposure Lawsuits, the *Garcia-Rosas* lawsuit, in an amount that exhausted the Each **Occurrence** limit of insurance under the applicable 2011-2012 Primary Policy.

32.    Because Ironshore has exhausted the Each **Occurrence** limit of insurance under the applicable 2011-2012 Primary Policy, its duty to defend has ended and it reserves its right to withdraw from the defense in the Silica Exposure Lawsuits. But because Caesarstone alleges that multiple policy periods are potentially triggered—which is incorrect under the Policies' deemer provision—Ironshore has agreed to continue defending the Silica Exposure Lawsuits, subject to its reservation of rights, including its right to withdraw from the defense because the applicable 2011-2012 Primary Policy is exhausted.

33.    A real and actual controversy exists between Ironshore and Caesarstone concerning the scope of coverage for the Silica Exposure Lawsuits.

34.    Therefore, Ironshore respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, in its favor, and against Caesarstone.

**COUNT I – DECLARATORY JUDGMENT**
**(The Common Insuring Agreement 3 Limits Coverage**
**to the 2011-2012 Ironshore Policy Period)**

35.    Ironshore re-alleges paragraphs 1-34 above and incorporates them by reference.

36.    For progressive or indivisible **bodily injury**, which takes place over a period of days, weeks, months or longer, Common Insuring Agreement (3) provides that such **bodily**

**injury** shall be deemed to have taken place only on the date of the first exposure or during the policy period of the first policy providing substantially the same coverage as this policy:

> The following applies to progressive or indivisible **bodily injury**, **property damage** or **environmental damage**, including any continuation, change or resumption of such **bodily injury**, **property damage** or **environmental damage**, which takes place over a period of days, weeks, months or longer caused by continuous or repeated exposure to the same, related or continuous (i) **pollution incident**, or (ii) general harmful conditions or substances.
>
> a.  Such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have taken place only on the date of first exposure to such **pollution incident** or general harmful conditions or substances; or
>
> b.  Such **bodily injury**, **property damage** or **environmental damage** shall be deemed to have taken place during the **policy period** of the first policy providing coverage substantially the same as that provided by **COVERAGE PART I** of this policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the policy period but only if:
>
> > (1)  The date of first exposure cannot be determined or is before the effective date of the first policy issued by us to you providing coverage substantially the same as provided by **COVERAGE PART I** of this policy for **bodily injury**, **property damage** or **environmental damage** that takes place during the **policy period**; and
> >
> > (2)  Such **bodily injury**, **property damage** or **environmental damage** continues, in fact, to take place during the **policy period**.

(Ex. 1-6, § I, Coverage Part I – Common Insuring Agreement (3))

37.  The Silica Exposure Lawsuits involve progressive or indivisible **bodily injury**, **property damage** or **environmental damage**, including any continuation, change or resumption of such **bodily injury**, **property damage** or **environmental damage**, which takes place over a period of days, weeks, months or longer caused by continuous or repeated exposure to the same, related or continuous (i) **pollution incident**, or (ii) general harmful conditions or substances.

38.    The Complaints allege prolonged exposure to silica by inhaling dust from cutting, grinding, drilling, and polishing the various defendants' products and developed a silica-related illness and/or disease as a result of the exposure to defendants' products from as early as 1988 through 2022.

39.    Because the individual lawsuits allege a date of first exposure before the effective date of the first policy issued by Ironshore, Common Insuring Agreement (3)(b) deems the **bodily injury** alleged in those lawsuits to have taken place during the **policy period** of the first Ironshore policy issued to Caesarstone, which is the 2011-2012 policy.[2]

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.    Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.    Declare that, under Common Insuring Agreement (3)(b), all **bodily injury** alleged in the Silica Exposure Lawsuits is deemed to occur during the May 17, 2011 to May 17, 2012 **policy period**;

C.    Declare that Ironshore's obligation to defend Caesarstone in the Silica Exposure Lawsuits, if any, is limited to the May 17, 2011 to May 17, 2012 Primary Policy.

D.    Grant to Ironshore any such other and further relief that this Court deems just and proper.

### COUNT II – DECLARATORY JUDGMENT
### (In the Alternative, Common Insuring Agreement 4 Limits Coverage to the 2011-2012 Ironshore Policy Period)

40.    Ironshore re-alleges paragraphs 1-39 above and incorporates them by reference.

---

[2] To the extent any of the lawsuits allege exposure that is wholly outside the policy periods for which Ironshore issued to Caesarstone, there would be no coverage.

41.    Coverage Part I – Common Insuring Agreement (4) provides that if alleged continuous **pollution incident** or general harmful conditions or substances resulted in **bodily injury** that took place in different policy periods issued by Ironshore, all such **bodily injury** shall be deemed to have taken place during the first policy issued by Ironshore:

> If the same, related or continuous **pollution incident** or general harmful conditions or substances results in **bodily injury**, **property damage** or **environmental damage** that takes place during **policy periods** of different policies issued by us to you providing coverage substantially the same as that provided by **COVERAGE PART I** of this policy for **Bodily Injury**, **property damage** or **environmental damage** that takes place during the **policy period**:
>
> a.    All such **bodily injury**, **property damage** and **environmental damage** shall be deemed to have taken place only during the first **policy period** of such policies in which any of the **bodily injury**, **property damage** or **environmental damage** took place; and
>
> b.    All damages arising from such **bodily injury**, **property damage** or environmental damage shall be deemed to have arisen from one **occurrence** and shall be subject to the Each Occurrence Limit applicable to the policy for such first **policy period**.

(*Id.* Common Insuring Agreement (4))

42.    The Silica Exposure Lawsuits involve the same, related or continuous general harmful conditions that takes place during **policy period**s of different policies issued by Ironshore.

43.    Again, because the individual lawsuits allege a date of first exposure before the effective date of the first policies issued by Ironshore, Common Insuring Agreement (4) would deem the **bodily injury** alleged in those lawsuits to have taken place during the **policy period** of the first Ironshore policy issued to Caesarstone, which is the 2011-2012 policy.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.      Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.      Declare that, under Common Insuring Agreement 4, all **bodily injury** alleged in the Silica Exposure Lawsuits is deemed to occur during the May 17, 2011 to May 17, 2012 **policy period**;

C.      Declare that Ironshore's obligation to defend Caesarstone in the Silica Exposure Lawsuits, if any, is limited to the May 17, 2011 to May 17, 2012 policy.

D.      Grant to Ironshore any such other and further relief that this Court deems just and proper.

**COUNT III – DECLARATORY JUDGMENT**
**(The Silica Exposure Lawsuits Constitute a Single Occurrence)**

44.     Ironshore re-alleges paragraphs 1–43 above and incorporates them by reference.

45.     The Silica Exposure Lawsuits constitute a single "occurrence" under "**SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**." Policy § I(1)(a). **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE** provides, in relevant part, that the Each Occurrence Limit is "the most we will pay for the sum of [damages under relevant coverage parts] because of all bodily injury, property damage and environmental damage arising out of any one **occurrence**." *Id.* § III(4).

46.     The Policy defines **occurrence** as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

47.     The Silica Exposure Lawsuits arise from alleged continuous or repeated exposure to substantially the same general harmful conditions—namely, prolonged exposure to silica from cutting, grinding, drilling, and polishing Caesarstone's products.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.      Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.    Declare that the Silica Exposure Lawsuits constitute a single **occurrence** under the Ironshore Policies.

C.    Declare that the single **occurrence** triggers solely the May 17, 2011 to May 17, 2012 Primary Policy (and follow form Excess Policy) under Common Insuring Agreement 3 and/or 4.

D.    Declare that Ironshore's duty to defend Caesarstone, if any, ends when the Primary Policy's $1 million Each **Occurrence** limit is exhausted.

E.    Grant to Ironshore any such other and further relief that this Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT
### (The Silica Lawsuits Constitute a Single Occurrence)

48.    Ironshore re-alleges paragraphs 1-47 above and incorporates them by reference.

49.    In the alternative, the Silica Exposure Lawsuits constitute a single **occurrence** under Common Insuring Agreement 4, which provides, in relevant part, as follows:

All damages arising from such **bodily injury**, **property damage** or environmental damage shall be deemed to have arisen from one **occurrence** and shall be subject to the Each Occurrence Limit applicable to the policy for such first **policy period**.

50.    The Silica Exposure Lawsuits involve the same, related or continuous general harmful conditions that take place during **policy period**s of different policies issued by Ironshore.

51.    Common Insuring Agreement (4) deems the **bodily injury** alleged in the Silica Exposure Lawsuits to have taken place during the **policy period** of the first Ironshore policy issued to Caesarstone, which is the 2013-2014 policy.

52.    Therefore, all damages arising from such **bodily injury** shall be deemed to have arisen from one **occurrence** and shall be subject to the Each **Occurrence** Limit applicable to the policy for such first **policy period**.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against

Caesarstone and asks this Court to:

A.    Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.    Declare that the Silica Exposure Lawsuits constitute a single **occurrence** under the Ironshore Policies.

C.    Declare that the single **occurrence** triggers solely the May 17, 2011 to May 17, 2012 Primary Policy under Common Insuring Agreement 3 and/or 4.

D.    Declare that Ironshore's duty to defend Caesarstone, if any, ends when the Primary Policy's $1 million Each **Occurrence** limit is exhausted.

E.    Grant to Ironshore any such other and further relief that this Court deems just and proper.

**COUNT V – DECLARATORY JUDGMENT**
**(No Duty to Defend Under the Excess Policies)**

53.    Ironshore re-alleges paragraphs 1-52 above and incorporates them by reference.

54.    The Ironshore Excess Policies provide that Ironshore has no duty to defend:

We shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the insured to which this policy may apply upon exhaustion of the applicable limits of insurance of the **underlying insurance**. If we have exercised such right, we may withdraw from the defense and tender the defense to the insured upon exhaustion of the applicable limits of insurance under this policy. If we do not exercise the right to assume charge of such defense or settlement, or if the applicable limits of the **underlying insurance** are not exhausted, we shall have the right and shall be given the opportunity to associate effectively with the insured or the **underlying insurer** or both, in the defense and control of any claim or suit likely to involve this policy. In such events, the insured, the **underlying insurer** and we shall cooperate in the defense of such claim or suit.

(Ex. 7-12, § IV(A)(1)).

55.    As stated above, Ironshore has exhausted the applicable 2011-2012 Primary

Policy through payment of settlements. But because Caesarstone alleges that multiple policy

periods are potentially triggered—which is incorrect under the Policies' deemer provisions—

Ironshore has agreed to continue defending the Silica Exposure Lawsuits under the applicable 2011-2012 Primary Policy, subject to its reservation of rights, including its right to withdraw from the defense.

56.     In no event, however, does Ironshore have an obligation to assume charge of the defense or settlement of any claim or suit against Caesarstone under the Excess Policies.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.     Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.     Declare that Ironshore has no obligation to defend Caesarstone under the Excess Policies; and

C.     Grant to Ironshore any such other and further relief that this Court deems just and proper.

## COUNT VI – DECLARATORY JUDGMENT
### (The "Other Insurance" Provision)

57.     Ironshore re-alleges paragraphs 1-56 above and incorporates them by reference.

58.     The Ironshore Policies' "Other Insurance" provision limits coverage as follows:

17.     Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this policy, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c.

b. Excess Insurance

(1) This insurance is excess over:

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(c) Any project specific primary insurance available to you covering liability for damages arising out of **your work**, for which you are an insured

(2) When this insurance is excess, we will have no duty to defend the insured against any suit if any other insurer has a duty to defend the insured against that suit.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also…

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits…

(Ex. 1-6, § IV (17))

59.     Upon information and belief, other carriers provided similar coverages to Caesarstone during the Ironshore Policies' effective period.

60.     Upon information and belief, Ironshore is not the only carrier on risk for the claims asserted against Caesarstone in the Silica Exposure Lawsuits.

61.     To the extent that other valid and collectible insurance is available to Caesarstone for the Silica Exposure Lawsuits, Ironshore is entitled to a declaration that coverage owed to Caesarstone is dependent on the "Other Insurance" provision as outlined above.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.     Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.     Declare that any coverage owed to Caesarstone may be limited by the Ironshore Policies' "Other Insurance" provision; and

C.      Grant to Ironshore any such other and further relief that this Court deems just and proper.

**Count VII – DECLARATORY JUDGMENT**
**(Ironshore Does Not Have A Duty To Indemnify Caesarstone For Punitive Damages)**

62.      Ironshore re-alleges paragraphs 1-61 above and incorporates them by reference.

63.      The Ironshore Policies provide that New York law governs.

64.      New York public policy precludes indemnification for punitive damages awarded by in-state and out-of-state courts.

65.      The Silica Exposure Lawsuits contain claims for punitive damages that may be asserted against Caesarstone by an out-of-state court.

66.      Therefore, Ironshore has no obligation to indemnify any punitive damages.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against Caesarstone and asks this Court to:

A.      Declare the rights and liabilities of Ironshore and Caesarstone with respect to the Ironshore Policies;

B.      Declare that coverage is not owed for any punitive damages asserted against Caesarstone in the Silica Exposure Lawsuits; and

C.    Grant to Ironshore any such other and further relief that this Court deems just and proper.

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: July 10, 2025

*/s/ Ronald P. Schiller*
Ronald P. Schiller
Michael R. Carlson (*pro hac vice* forthcoming)
Martha R. Osisek (*pro hac vice* forthcoming)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Facsimile: (215) 568-0300
rschiller@hangley.com
mcarlson@hangley.com
mosisek@hangley.com
*Counsel for Plaintiff Ironshore Specialty Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 10, 2025, I caused true and correct copies of the foregoing and all papers supporting the motion to be served on all counsel of record by filing same with the Court's ECF filing system, by operation of which all counsel of record have been served electronically.

By: <u>*/s/ Ronald P. Schiller*</u>
Ronald P. Schiller